UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURE IMPLEMENT WORKERS OF AMERICA LOCAL 2383, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 3: 11-22-DCR |
| V. | ) ) | |
| MARTINREA HEAVY STAMPINGS, INC., | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court for consideration of the Motion to Dismiss filed by Defendant Martinrea Heavy Stampings, Inc. ("Martinrea" or "the Company"). [Record No. 6] Martinrea argues that the Complaint of Plaintiff United Auto Workers Local 2383 ("the Union") is barred by the applicable statute of limitations. The Court heard oral argument on the motion on this date. For the reasons discussed below, Martinrea's motion will be granted.

### I.  BACKGROUND

Martinrea and the Union are parties to a collective bargaining agreement. This case arises out of a grievance filed by the Union pursuant to that agreement and the arbitration that followed. The grievance pertained to the eligibility of two Martinrea employees, Kevin Kennedy and Anthony Volpe, for retirement and early retirement benefits. The dispute was not resolved

through the grievance procedure and consequently was submitted to an arbitrator. The following two issues were presented to Arbitrator Langdon D. Bell for decision:

> Issue #1
>
> With respect to Kevin Kennedy and Anthony Volpe, when is or was each eligible for early retirement under the Martinrea Heavy Stampings, Inc., Shelbyville Retirement Security Plan or the Collective [B]argaining Agreement with an early retirement supplement? (1) The Union maintains that they were eligible when each, respectively, attained at least 30 years of eligibility service and the combination of his age and years of eligibility service totaled 80 . . . . (2) The Company maintains that Kennedy and Volpe are not eligible until each, respectively, has attained at least 30 years of eligibility service and the combination of his age and years of eligibility service totals 85 . . . .
>
> Issue #2
>
> With respect to Kevin Kennedy and Anthony Volpe, what entity should pay the supplement[?] (1) The Company maintains that it should be apportioned between the Martinrea Heavy Stampings, Inc., Shelbyville Retirement Security Plan ("Plan") and the Budd-UAW Consolidated Retirement Benefit Plan. (2) The Union maintains it should be paid entirely by the Plan.

[Record No. 1-2, p. 3 (footnotes omitted)]

The arbitrator issued his Decision and Award on October 29, 2010. In it, he concluded that Kennedy and Volpe "were eligible to retire when each, respectively, attained at least 30 years of eligibility service and the combination of their age and years of eligibility total 80 [(the "Rule of 80")] . . . and that [the] reduced supplement provided for herein should be paid entirely by the Shelbyville Pension Plan." [*Id.*, p. 64] Arbitrator Bell's reference to a "reduced supplement" reflected his finding that the parties had agreed to the Rule of 80, subject to reduction of the $1,700 monthly benefit based upon an employee's age at retirement.[1] [*See id.*,

---

1  Under this "'80 points with reductions' scenario," as the arbitrator explained in his decision, an employee who retired at age 50 after 30 years of service would receive a smaller percentage of the $1,700

pp. 47-60] The arbitrator stated that he would retain jurisdiction "for ninety days to resolve any issues associated with the implementation of this Award." [*Id.*, p. 64]

On December 15, 2010, the Union filed a motion with the arbitrator seeking "'clarification'" or "'resolution'" regarding the early-retirement benefits due Kennedy and Volpe under the October 29 Award. [Record No. 1-3, pp. 3-4] The Union argued that Martinrea had improperly implemented the Award by paying the employees early-retirement supplements of less than $1,700 per month. [*See id.*, p. 4] In the Union's view, the arbitrator had ruled in its favor on the two issues presented to him — *i.e.*, when the employees were eligible for early retirement and what entity was responsible for paying their benefits — and should not have reduced the amount of the monthly payments Kennedy and Volpe would receive. [*See id.*] Arbitrator Bell disagreed. On February 2, 2011, he issued a decision captioned "Arbitrator's Ruling on Union's Motion to Clarify and/or Resolve an Issue Associated with Implementation of the Arbitration Award Issued Herein October 29, 2010" [*id.*, p. 1] in which he found the October 29 Award to be "consistent with his authority upon finding a violation of the parties' collective bargaining agreement (the employer's failure to recognize employees' rights to early retirement benefits based on the 'Rule of 80') to order an appropriate remedy as dictated by the same collective bargaining agreement." [*Id.*, p. 5] The arbitrator explained, "What the Arbitration Decision and Award did was give effect to the Union's own proposal of January 4,

---

monthly benefit than an employee who retired at age 55 with the same length of service. [Record No. 1-2, p. 54] Arbitrator Bell observed that the parties had not raised the issue of reductions and noted that such an arrangement "could be 'problematic' for the union as it would reduce benefits for a more senior employee with thirty years of service so as to provide also reduced retirement benefits — for the first time — to a fifty year old employee with thirty years of service." [*Id.*, pp. 54-55]

2002, in which the union melded both the reduction in eligibility for early retirement and the reduction in early retirement benefits into a single provision . . . ." Accordingly, in the final paragraph of his ruling (under the heading "Supplemental Order"), Arbitrator Bell concluded that Martinrea had not erred in its implementation of the Award by reducing the employees' monthly benefits below $1,700. [*Id.*, p. 6]

The Union filed the present lawsuit on April 26, 2011, pursuant to section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Alleging that the arbitrator exceeded his authority by reducing the amount of the early-retirement benefits Kennedy and Volpe should receive, the Union seeks to have that part of the October 29 Award vacated. [Record No. 1, p. 7] It also asks the Court to enforce the Award with respect to when the employees may retire and who should pay their benefits. [*Id.*] The Union's claims, however, are time-barred.

## II.   ANALYSIS

The parties agree that the statute of limitations for the Union's claims is three months. *See* Ky. Rev. Stat. § 417.050 (exempting collective bargaining agreements from coverage under state arbitration act); *Occidental Chem. Corp. v. Int'l Chem. Workers Union*, 853 F.2d 1310, 1315-16 (6th Cir. 1988) (adopting three-month limitations period for § 301 suits where no analogous state cause of action exists); *Int'l Bhd. of Teamsters, Local 783 v. Dean Foods Co.*, No. 91-6259, 1992 U.S. App. LEXIS 16875, at *14 (July 14, 1992) (applying *Occidental* to find three-month statute of limitations applicable to § 301 suits in Kentucky). Thus, for present purposes, the only relevant issue is when the limitations period began to run. More specifically,

the Court must determine which of the arbitrator's decisions triggered the statute of limitations: the October 29 Award, or the February 2 Ruling?

Citing several cases in support of its position, Martinrea maintains that the October 29 Award was final and appealable. Therefore, it asserts, the deadline to challenge the Award passed in January 2011. [Record No. 6, pp. 3-4; Record No. 15, pp. 3-7] According to the Union, however, it was Arbitrator Bell's second ruling that started the clock running. [Record No. 12, p. 3 ("Because the Arbitrator retained jurisdiction, the arbitration process was not complete until the issuance of the Supplemental Order [on] February 2, 2011.")] The Union relies primarily on policy arguments, without citations, to bolster its position. [*See id.*, pp. 3-4]

A "final" arbitration award is one that is "intended by the arbitrator to be his complete determination of every issue submitted to him." *Anderson v. Norfolk & Western Ry. Co.*, 773 F.2d 880, 883 (7th Cir. 1985). If the arbitrator has "retain[ed] jurisdiction in order to decide a substantive issue the parties have not yet resolved, this retention of jurisdiction 'indicates that the arbitrator did not intend the award to be final.'" *Orion Pictures Corp. v. Writers Guild*, 946 F.2d 722, 724 (9th Cir. 1991) (quoting *Millmen's Local 550 v. Wells Exterior Trim*, 828 F.2d 1373, 1376-77 (9th Cir. 1987)). Courts must look to "the language and nature of the award itself" and make an objective determination of the arbitrator's intent. *Teamsters Local 486 v. Quality Carriers, Inc.*, No. 02-10059-BC, 2003 U.S. Dist. LEXIS 886, at *13 (E.D. Mich. Jan. 22, 2003).

Here, the arbitrator's October 29 Decision and Award clearly resolved both of the substantive issues presented to him: (1) when the employees were eligible to retire (after 30

years of eligibility service and a combined total of 80 years of eligibility service and age), and (2) what entity should pay their early-retirement benefits (the Shelbyville Plan). [Record No. 1-2, p. 64] When analyzing the first issue, Arbitrator Bell determined that the parties had agreed to reductions as part of their agreement that the Rule of 80 would apply. [*See* Record No. 1-2, pp. 47-60; *see also* Record No. 1-3, p. 4; *id.*, p. 5 (noting documents of record demonstrating "that both parties ultimately agreed to the reduction in the [early-retirement] supplement to reflect its early receipt")] In fact, the Union acknowledges that "[t]he issue of liability was not in question" following the October 29 Award and that the purpose of its motion — and the arbitrator's February 2 Ruling — was merely "to 'clarify and/or resolve an issue associated with implementation of the initial Award.'" [Record No. 12, p. 4]

Both parties cite *McKinney Restoration Co. v. Illinois District Council No. 1*, 392 F.3d 867 (7th Cir. 2004), in which the Seventh Circuit held that an arbitration award is final and appealable when the "arbitrator believes the assignment is completed." *Id.* at 872. The *McKinney* court noted that an arbitrator's retention of jurisdiction may be a "marker" of a non-final order where a substantive issue — *e.g.*, remedy — remains to be resolved. *Id.*; *see also Int'l Bhd. of Elec. Workers, Local 124 v. Alpha Elec. Co.*, 759 F. Supp. 1416, 1420 (W.D. Mo. 1991) ("An award is not 'final' if it decides only liability and leaves unresolved the question of remedy."). Such a situation is not presented here, however. As explained above, the arbitrator's October 29 Award unequivocally resolved both substantive issues submitted to him, and he retained jurisdiction only for the purpose of "resolv[ing] any issues associated with the

implementation of th[e] Award." [Record No. 1-2, p. 64] *McKinney* is therefore unhelpful to the Union.

*Sterling China Co. v. Glass, Molders, Pottery, Plastics & Allied Workers No. 24*, 357 F.3d 546 (6th Cir. 2004), cited by the Union, is likewise distinguishable. In *Sterling*, as in this case, the arbitrator issued an award in which he "'retain[ed] jurisdiction should any disputes arise between the parties with respect to the implementation of th[e] remedy.'" *Id.* at 554. More than two years later, after continued disagreement between the parties concerning "the proper application of the issued remedy," *id.* at 552, the arbitrator issued a supplemental award. *Id.* at 551. The company then filed suit in federal district court, seeking to vacate the supplemental award. *Id.* at 548. It argued that the supplemental award was null and void because the union had waited too long to ask that the original award be vacated or changed. *Id.* Thus, at issue in *Sterling* was whether the arbitrator's second ruling, made during his period of retained jurisdiction, was valid under the applicable statute of limitations. Here, by contrast, the Complaint makes clear that the Union seeks to challenge only the arbitrator's original decision. The relief sought relates not to the February 2 Ruling, but rather the October 29 Award. [*See* Record No. 1, p. 7 (asking the Court to enforce in part and vacate in part the October 29 Award)] Unlike the situation presented in *Sterling*, the pertinent issue here is not the validity of the arbitrator's second decision, but whether the Union missed its chance to challenge the first.

Relevant on that point is the supplemental authority provided by Martinrea's counsel during oral argument: *Dreis & Krump Mfg. Co. v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 8*, 802 F.2d 247 (7th Cir. 1986). There, the court rejected an argument that

the arbitrator, by retaining jurisdiction to resolve any issues that arose concerning implementation of his award, "had somehow deprived the award of its finality." *Id.* at 250-51. Two reasons underlay the court's conclusion:

> First, all that was in doubt was the precise amount of backpay, for which the company's records had to be consulted but which once they were consulted would be determined automatically, without an exercise of judgment or discretion. This was, therefore, a "ministerial" detail, such as would not have prevented the judgment from being deemed final for purposes of appeal; no more did it prevent the award from becoming final for purposes of starting the statute of limitations running. Second, and more interesting, the analogy between a suit to set aside an arbitration award and an appeal from a regular judgment is just an analogy, and not an identity, and it breaks down on the issue of finality. A suit to set aside an arbitration award under section 301 of the [LMRA] is a suit for breach of contract, the contract being the arbitration clause of the collective bargaining agreement; and the suit is ripe as soon as the breach is definitive. Quite apart from the details of backpay, the rendition of an award which if the company is correct ordered it to do things . . . that were in excess of the arbitrator's authority to order was a breach of contract that set the statute of limitations running.

*Id.* at 251 (citations omitted).

The reasoning of *Dreis & Krump* is persuasive here. First, the implementation of Arbitrator Bell's October 29 Award was a "ministerial" task that merely required the parties to apply the formula set forth in the Award. *Id.* Furthermore, the breach of contract asserted by the Union in this case is the arbitrator's issuance of the October 29 Award, parts of which allegedly exceeded his authority under the parties' collective bargaining agreement. [*See* Record No. 1, p. 7] As the *Dreis & Krump* court explained, the statute of limitations began to run "as soon as the breach [was] definitive" — *i.e.*, as soon as the arbitrator issued the October 29 Award. 802 F.2d at 251.

Moreover (and more importantly), the Award itself indicates that Arbitrator Bell intended it to be final. As Martinrea points out, the arbitrator stated at the outset that he had "full jurisdiction and authority to issue a final and binding award on the issues." [Record No. 1-2, p. 30; *see* Record No. 15, p. 4] He did not "retain[] jurisdiction . . . to decide a substantive issue the parties have not yet resolved," *Orion Pictures Corp.*, 946 F.2d at 724; rather, the substantive issues — eligibility for early retirement and who would pay the benefits — were clearly disposed of by the October 29 Award. In short, "the language and nature of the award," *Teamsters Local 486*, 2003 U.S. Dist. LEXIS 886, at *13, show that it was meant to be a "complete determination of every issue submitted."[2] *Anderson*, 773 F.2d at 883. Thus, the October 29 Award was final and appealable. *See id.*

### III. CONCLUSION

The arbitrator's October 29, 2010 Decision and Award resolved all substantive issues submitted to him and was intended to be final and binding. Because the Union did not file its Complaint until nearly six months later, this action is barred by the three-month statute of limitations. Accordingly, it is hereby

---

2 Tellingly, although it twice refers to the February 2 Ruling as a "final" decision (perhaps merely in the chronological sense), the Union makes no attempt to argue that the October 29 Award was *not* final under the definitions set forth in the various cases cited above. [*See* Record No. 12] Instead, the Union's position is simply that the statute of limitations did not run for as long as the arbitrator retained jurisdiction. [*See id.*, pp. 3-4] As Martinrea observes, however, the parties had already exhausted the arbitrator's jurisdiction over the merits of the grievance; he retained jurisdiction only to the extent there were "any issues associated with the implementation of th[e] Award." [Record No. 1-2, p. 64; *see* Record No. 15, p. 8]

**ORDERED** that Defendant Martinrea Heavy Stampings, Inc.'s Motion to Dismiss [Record No. 6] is **GRANTED**. This matter is **DISMISSED**, with prejudice, and stricken from the Court's docket.

This 9th day of August, 2011.

Signed By:
*Danny C. Reeves* DCR
United States District Judge